THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BENJAMIN ERTEL, Appellant.

Argued June 10, 1940; decided July 24, 1940.

*Frank Balleta* and *Abraham Broido* for appellant. The evidence adduced by the People was insufficient as a matter of law to make out a case against the defendant, the verdict

was contrary to the weight of the evidence and such evidence did not warrant a verdict of guilt beyond a reasonable doubt. (*People* v. *O'Farrell*, 175 N. Y. 323; *People* v. *Elliott*, 106 N. Y. 288; *People* v. *Bissert*, 71 App. Div. 118; *People* v. *Weiss*, 129 App. Div. 671; *People* v. *Butler*, 62 App. Div. 508; *People* v. *Kudon*, 173 App. Div. 342; *People* v. *Josephs*, 143 App. Div. 534; *People* v. *Kerr*, 6 N. Y. Supp. 674; *People* v. *Courtney*, 28 Hun, 589; *People* v. *White*, 62 Hun, 114.)

*Thomas E. Dewey, District Attorney* (*Stanley H. Fuld* and *Burr F. Coleman* of counsel), for respondent. The defendant's guilt was proved beyond a reasonable doubt. (*People* v. *Collins*, 271 N. Y. 254; *People* v. *Roper*, 259 N. Y. 170; *People* v. *Crum*, 272 N. Y. 348; *People* v. *Reddy*, 261 N. Y. 479; *People* v. *Dixon*, 231 N. Y. 111; *People* v. *Cohen*, 223 N. Y. 406; *People* v. *Becker*, 215 N. Y. 126; *People* v. *Sanducci*, 195 N. Y. 361; *People* v. *Broncado*, 188 N. Y. 150; *People* v. *Rodawald*, 177 N. Y. 408.)

CONWAY, J. The defendant was convicted of murder in the first degree. He entered into a conspiracy with six others to rob the patrons of a restaurant situated on the second floor of the premises 144 Second avenue, Manhattan, New York city. They selected those premises because other robbers had obtained $3,500 in a hold up there only two weeks before. The defendant was one of three who were to " hold the guns."

Shortly after three o'clock on the morning of April 10, 1937, the door leading into the restaurant from the hall was suddenly opened and Guariglia and Friedman, two of the other conspirators, entered. Friedman, with a gun in his hand, ran toward the rear of the restaurant, shouting, " This is a stick-up; everybody up." Two detectives, Foley and Gallagher, in plain clothes, were seated at a table near the entrance, talking to the proprietor. O'Loughlin then entered and went toward the table where the detectives were seated. The defendant, who followed, came as far as the door and stayed there. As O'Loughlin ordered:

"You fellows in the back with the rest of those men," Gallagher was withdrawing his gun from his topcoat pocket. Foley opened his coat and reached for his gun which he carried in a holster. As he did, O'Loughlin shot and mortally wounded him. Gallagher then shot twice at O'Loughlin, who fell to the floor. After Gallagher arose, the defendant, who was still in the doorway, fired twice at Gallagher, who returned the fire, and then the defendant fled down the stairs. He was not arrested until June 29, 1938. In the meantime the other conspirators had been apprehended and convicted. (*People* v. *Guariglia*, 279 N. Y. 707.)

We agree that the evidence established the guilt of the defendant of murder in the first degree within the provisions of subdivision 2 of section 1044 of the Penal Law.

It is urged, however, that the trial court erred in his charge with reference to the recommendation permitted to be made by a jury under the provisions of section 1045-a of the Penal Law. That section reads as follows:

" Life imprisonment for felony murder; jury may recommend. A jury finding a person guilty of murder in the first degree, as defined by subdivision two of section ten hundred forty-four, may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life. Upon such recommendation, the court may sentence the defendant to imprisonment for the term of his natural life."

The court charged: that " There is one feature that applies to this sort of murder that does not apply to common law murder. About three years ago the Legislature saw fit to pass a law providing that in cases of felony murder the jury could, as a part of their verdict, recommend to the Court the imposition of life imprisonment instead of the punishment of death. Before that law was passed, the law assumed responsibility for the punishment. The punishment of murder was heavy, but the law took all that responsibility on its own shoulders. It did not put it on the shoulders

of a jury or on the shoulders of the Court. Under this law it has been shifted to the shoulders of the jury. And then the law says that the Judge may act on that recommendation, but does not say he must. So it has also been shifted to the shoulders of the Judge.

"I cannot guide you in details. There is no fixed law as to that recommendation. All I can say is that the law no doubt presupposes that the jury will be guided by a sense of duty, by a sense of fairness, by a sense of the rights of all parties, in making up their minds whether or not there are extenuating circumstances of such weight as could justify a recommendation. In other words, it seems to me that you are in the position that I am in every day here when I have to sentence somebody. Ordinarily, when a defendant comes up for sentence I have to determine what the sentence is going to be. I have to take into consideration whether the circumstances are aggravated, whether the circumstances contain extenuating features; I have to take into consideration what the crime is, and so on, in making up my mind what the punishment shall be. And the law assumes that in making, or refusing to make, this recommendation, that you should do about the same thing. You will look upon it as if you were a judge having to impose sentence, and determine whether you are required or not required to make this recommendation.

"In this case, as I say, you will determine all the features of the case, the behavior of the defendant at the place of the attempted robbery, his age, the circumstances under which he acted, and determine the rights of the community and the rights of police officers to protection in their lives while they are acting in the course of their duty; and make up your minds as fair judges, as you would if you were going to impose sentence yourself, as to whether there should be such a recommendation."

This is claimed to be error requiring a reversal of the judgment of conviction and the granting of a new trial.

It must be presumed that when the Legislature enacted section 1045-a of the Penal Law it had a purpose in so doing

and that that purpose was founded upon reason and justice. We are not prepared to assume that it was done in order to permit a jury to make or withhold the recommendation because of sympathy or prejudice. The crime committed is still murder in the first degree, but because it is the killing of a human being, without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise, the jury has power, if it seems proper to it to exercise such power, to recommend life imprisonment. The mental processes which bring about the recommendation are to be reasoning and rational ones. To hold otherwise is to say that the Legislature purposed permitting jurors to put aside reason. The Legislature has not said so and until it does, we may not. If the trial judge had charged that in making up their minds whether to make a recommendation under section 1045-a of the Penal Law, the jury should make the recommendation if reason dictated or permitted that course, it surely would have been a correct statement. He went further, however, and charged as quoted *supra*. We are agreed that it would be better practice to charge in the words of the statute, but the charge under the circumstances here presented was not error. The argument of defendant's counsel in his summation was that the defendant, who did not take the stand, was of poor background and education and should not be executed. He went so far as to say that if defendant were of different class and circumstance, he would not be executed. His appeal was both to passion and to prejudice. Faced with this situation, the trial judge attempted to point out that recommendations under section 1045-a of the Penal Law were to be based on reason and judgment. Viewing the trial as a whole, the charge complained of did not constitute error. Even had the jury made a recommendation, it would not have been binding on the court. (*People* v. *Gati*, 279 N. Y. 631.)

The judgment of conviction should be affirmed.

LOUGHRAN, J. (dissenting). The case for the People was that the defendant was engaged with six other persons in the concerted commission of a robbery when one of his confederates shot and fatally wounded a police officer. On that theory of the trial (as the judge told the jury), the defendant could be found guilty only of murder in the first degree though there was no design to kill. (Penal Law, § 1044, subd. 2.) Accordingly the defendant's request for submission of the degrees of homicide was refused. The verdict was: " We find the defendant guilty of murder in the first degree."

In finding a person guilty of such a felony murder, the jury " may, as part of its verdict, recommend that the defendant be imprisoned for the term of his natural life." (Penal Law, § 1045-a.) Respecting this power of the jury, the trial judge charged as follows: " There is no fixed law as to that recommendation. All I can say is that the law no doubt presupposes that the jury will be guided by a sense of duty, by a sense of fairness, by a sense of the rights of all parties, *in making up their minds whether or not there are extenuating circumstances of such weight as could justify a recommendation.* * * * You will determine all the features of the case, the behavior of the defendant at the place of the attempted robbery, his age, the circumstances under which he acted, *and determine the rights of the community and the rights of police officers to protection in their lives while they are acting in the course of their duty;* and make up your minds as fair judges, as you would if you were going to impose sentence yourself, as to whether there should be such a recommendation." (The emphasis is mine.) These admonitions, as I read them, limited too strongly against the defendant the power given to the jury by section 1045-a.

" Extenuating circumstances " must be rare in a case of guilt of felony murder. The constructive nature of the offense — murder from implied malice — negatives the idea of palliation. (See *People* v. *Giro,* 197 N. Y. 152, 157, 158.) Where there is an issue in respect of the intoxication of the accused or of duress practiced upon him, the

degrees of homicide must be submitted to the jury (*People v. Cummings*, 274 N. Y. 336), and in that case a verdict of guilty of murder in the first degree signifies that no mental limitation excused the defendant. It follows, I think, that there was no valid reason why the jury should have been told (as in effect they were told) that section 1045-a contemplates only cases of felony murder committed in " extenuating circumstances."

The evidence disclosed nothing at all that could extenuate the killing of the police officer. Consequently the pronouncement of the court — that the jury should " determine the rights of the community and the rights of police officers to protection in their lives while they are acting in the course of their duty " — must have meant that a verdict of guilty ought not to include a recommendation of life imprisonment of the defendant. Such a direction cannot be reconciled with the unqualified letter of section 1045-a that " as part of *its* verdict " a jury "*may*" recommend life imprisonment for felony murder.

I cannot escape the conclusion that the charge of the trial court may have substantially lessened the right of the defendant to have the jury say whether he should be relieved of the death penalty. It is my judgment also that it is a mistake to justify this departure from the principle that the force of a plain and simple statute should not be weakened with the jury by qualifying words. (Cf. *People* v. *Fitzgerald*, 156 N. Y. 253, 266.)

I vote to reverse the judgment of conviction and to grant a new trial.

LEHMAN, Ch. J., FINCH and RIPPEY, JJ., concur with CONWAY, J.; LOUGHRAN, J., dissents in opinion, in which SEARS, J., concurs; LEWIS, J., taking no part.

Judgment of conviction affirmed.